In the

# United States Court of Appeals
## For the Seventh Circuit

No. 14-1317

UNITED STATES OF AMERICA on the relation of THERESA HILL,

*Plaintiff-Appellant*,

*v.*

CITY OF CHICAGO, ILLINOIS,

*Defendant-Appellee*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 08 C 4540 — **Rebecca R. Pallmeyer**, *Judge*.

ARGUED OCTOBER 27, 2014 — DECIDED NOVEMBER 14, 2014

Before WOOD, *Chief Judge*, and EASTERBROOK and WILLIAMS, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. When applying for several federal grants between 2005 and 2008, Chicago represented that it had "formulated an Equal Employment Opportunity Plan in accordance with 28 C.F.R. §42.301, et seq., subpart E, that was signed into effect within the past two years by the proper authority and that it is available for review." This certification is required by regulations implementing a portion

of the Omnibus Crime Control and Safe Streets Act of 1968, under which the grants were made. The regulations to which the certification refers require that an equal employment opportunity program commence within 120 days of the initial grant. So the City was certifying two things: that it had a *plan* and that it would implement a *program*.

Theresa Hill contends in this *qui tam* action under the False Claims Act, 31 U.S.C. §§ 3729–33, that the first certification was false because, although the City had a written plan, and implemented an equal opportunity and affirmative action program, the program differs from the plan. For example, although the plan provides that the "Commissioner of Personnel" chairs the "Equal Employment Opportunity / Affirmative Action Advisory Council", the City has not had a "Commissioner of Personnel" since a reorganization in 2000. That position was replaced by a "Commissioner of Human Resources" and the advisory council by an "Executive Diversity Committee".

The Commissioner of Human Resources testified by deposition that she had never heard of an "Equal Employment Opportunity / Affirmative Action Advisory Council" and was not familiar with an "Equal Employment Opportunity Plan." But the Commissioner also testified that the City has an equal opportunity and affirmative action program, to which the Department devotes considerable efforts. Hill does not contend that the City's program falls short of federal requirements in any way. Instead the claim is formal: the program does not follow the written plan. Hill insists that the City thus did not "really" have a plan between 2005 and 2008 and is liable for falsely certifying that it did. After the United States declined to intervene and adopt Hill's ar-

guments, the district court granted summary judgment to the City. 2014 U.S. Dist. LEXIS 4698 (N.D. Ill. Jan. 14, 2014).

The district court was right to say that the City had a plan. Chicago also was implementing the plan's substance, though not all of its details. Any written plan sensibly can be understood to allow adaptations. Given the substantial agreement between the written plan and what the City was doing in fact, no federal agency has parted with money under false pretenses.

More than that: the record does not establish that the people in the Police Department and other bureaus who wrote grant applications and attached the City's plan knew that the Department of Human Resources was implementing a program different from the plan, and without knowledge of falsity there cannot be a knowingly false claim, as §3729(a)(1), (b)(1) requires for liability.

Doubtless the people who submitted the grant applications knew that bureaucracies tend to develop their own folkways. Job descriptions don't match what employees do in fact. Organization charts show a hierarchy that does not reflect who actually reports to whom, who has final authority to sign off on a project, or which supervisor handles what tasks. A plan may show that four levels of the staff (an original decision plus three levels of review) process equal employment complaints, while only two levels of review are used in practice. Departing from the formal documents in order to get things done more quickly or accurately is common, and some flexibility is essential when administrators encounter circumstances that plan-writers did not anticipate. Chicago has a huge bureaucracy; what works in one bureau may not work in another, and slavishly following a single

plan could be counterproductive. Unions that call on members to "work to rule" as an alternative to a strike know that nothing cripples a bureaucracy faster than handling everything by the book. No one who stands in line for service at a public agency, or waits impatiently for an agency to resolve a grievance or issue a license, wants every written procedure to be followed. Practical accommodations are a relief.

The record shows that Chicago's Department of Human Resources gets the job done pragmatically rather than by following all of a written plan's details. But as long as it has a plan, and does get the job done, the City is in compliance with the representations made to obtain the grants.

AFFIRMED